Good morning, your honors. My name is George Anthony Long, and I represent Zhang Xiaozhang, who contends that all four convictions in this case for conspiracy to defraud the United States should be reversed. We would like to reserve six minutes for rebuttal in this argument, and I will proceed with seven minutes addressing the issues of the inadequacy of the jury instructions and the insufficiency of the evidence. Mr. Berline would then take and use the balance of the time remaining for the initial portion of the argument. So what you're saying is at this stage, your side would like to use 14 minutes and reserve six. Yes, your honor, that is correct. We'll try to help you do that, but sometimes our questions will take you off course, but go ahead. Now, let's continue. The jury instructions require reversal in this case on three different grounds. One, the jury instructions failed to adequately instruct on a very viable defense theory of the case. The jury instruction inadequately instructed on the crucial element of deceit, and the instructions misstated the law regarding the existence of a legal duty. With respect to the defense, it was a key defense in this case. And am I correct that there were no contemporaneous objections made at the time the jury instructions were formulated? So do we review this for plain error? No, your honor. There were objections made at the time these jury instructions were put together. They were made. They were preserved. So it's the abuse of discretion theory. Yes, they were made, and they were preserved. Now, with respect to the defense theory, it was a key theory of the defense that the defendant were legally planning to travel by boat from the Commonwealth of Northern Mariana Islands to Guam. And they were traveling for the purpose of requesting asylum. All of the defendants were citizens of the People's Republic of China. None were U.S. state citizens, so we don't have that issue before us. Now, in fact, in the opening statement, Mr. Zhang was laying out the defense of being that the defendants were planning to travel from the Commonwealth, which was one part of the United States, to Guam, which was another part of the United States, which was a perfectly valid trip. Now, the government objected. At the very beginning of the trial, the government objected to that particular presentation stating it was an incorrect statement of law. And at that point, the trial judge said, well, hold it, hold it, and then he informed the jury. He would instruct the jury on these points of law after the conclusion of the case of just hold your horses. That's where it stood. But don't we have that provision in 1182d7, which requires that any alien that leaves the Northern Marianas and who seeks to enter the continental United States or any other place under the jurisdiction of the United States has to comply with these rules? No. I disagree, Your Honor. What 1182d7 provides is that if an alien leaves the Northern Marianas and seeks to enter, which is a specific term of art, the continental United States or another place under the United States jurisdiction, then certain criteria for admissions or inadmissibilities in 1182a apply. Right, but isn't that what we have here? No, this is not what we have here. This is not what we have here. But weren't they entering to seek asylum and all of that? Well, first of all, they weren't entering. That's the point. They were not entering. The case of United States v. Lee, which this Court decided specifically dealt with, what does the term enter mean within the context of immigration law? And the Court was quite clear that the term enter, when it's used in immigration law, has a precise defined meaning that has been in use for an extended period of time. So, in other words, you can't enter the United States if you're already in the United States. That's correct. I understood the government's theory of 371 conspiracy to be different. This is a conspiracy to obstruct governmental operations. Correct. Let me finish my question. And so, as I understand it, the government was seeking to establish a conspiracy, which had as its purpose the evading of the designated port of entry, which I assume is the harbor on Guam. I don't know. But let me finish the question. But that the evidence showed, and I guess essentially through the testimony of the co-conspirator slash cooperating witness who testified for the government at trial, that instead of landing at the designated harbor where they would have presented themselves to DHS officials, the plan was to land the boats in the hotel area and hide in the bushes. Have I got the government's theory right? I think you have. That is the object of the conspiracy here, without regard to whether or not they were making an entry. Okay. Essentially, the government was claiming, as they alleged in the indictment, they were alleging that the defendants were entering, were planning to enter the United States. Again, we will get to that point. And they claimed they were doing it deceitfully in that they were trying to evade, elude inspection on Saipan first. The whole point first was they were trying to evade and allege detection on Saipan. Well, leaving at 345 in the morning is not exactly. Well, Your Honor, well, there's nothing unlawful about that. That's the first point. Well, but it might be sinister if the jury thinks that leaving Rota under cover of darkness in the middle of the night is part of the conspiracy to avoid detection by officials who might be looking to see who's leaving the port at Rota. Yeah, but, Your Honor, if you have no duty, then it doesn't matter. It's not deceitful. It's not unlawful. But you can be convicted of a conspiracy by engaging in perfectly legal acts, which has as its objective an unlawful purpose, the obstruction of governmental function. Correct, Your Honor, correct. But the point is here is that there was no unlawful purpose. That's the whole point. There was, for instance, leaving, traveling, as Lee establishes, traveling from the Commonwealth to Guam. It's not an entry in the United States. It's merely travel from one part of the United States to another part of the United States, regardless of where you land on Guam. It doesn't matter. You're down to seven minutes. You just used seven minutes. I'm just mentioning that to you. Yes, all right. But in any event, what we'd like to point out is that, one, the government was trying to say there may have been some duty, there was a duty for them to report to immigration officials on Guam. However, one, there was no fact proved on Guam where they would report nothing shown on that, and the court acknowledged that fact when they said the record is absolutely devoid. They never showed where there was this quote point it was supposed to go. And, two, it's our position that 1182D doesn't even impose that requirement because it presupposes an entry, which is a place from outside a foreign place, into the continent of the United States or into another jurisdiction. But you keep sliding into the substantive offense. And the problem I'm having, we're dealing with a separate crime of conspiracy. And the conspiracy doesn't require an entry or an attempted entry. As I understand the theory of the prosecution, the object of the conspiracy was to arrive on Guam undetected and, therefore, to evade the immigration inspection function by hiding in the bushes on the tourist beach rather than showing up and reporting to the captain of the port that we just arrived from Rota, please call the customs and immigration inspector. Well, that's one of the fundamental differences because the defense were, the defendants were, they were going to direct you to Guam and report to the official because they had those That is the key fact question that the jury had to resolve. And if they believe the government's cooperating witness, then they would disbelieve the truth of the statement you just made. But then, Your Honor, that presupposes there was a duty in order to land at a place designated by immigration officials and that's why we have to get to the law because there is no such duty imposed by law for a person traveling from the Commonwealth to Guam, even if they are alien. So that's the point. And if there is that not duty, then they've done nothing wrong. They can travel to Guam, land at the PIC, go to the immigration officials and say, here we are, perfectly legal. So there is no conspiracy. That's why we get to the point of the injury instructions of which were not given, which we think adversely affected the defense presentation of their theory. Thank you very much. At this time, I turn it over to Mr. Berline. Thank you very well. Please support. My name is Bruce Berline. I represent. Mr. Berline, if you want to save six minutes for rebuttal, that clock has to end at 6. Okay, just. Very well. Thank you, Your Honor. I represent Lee Hawaii. Quickly, we're dealing with a conspiracy to defraud the government of 371. And when we're dealing with conspiracy, we have to carefully scrutinize the indictment and interpret it narrowly because this is a very broad, powerful, vague statute that is susceptible to extreme misuse by the government. So what we did, this whole case, I want to take back a little bit. This whole case started. So are you making an as-applied challenge to the constitutionality of 371? No, Your Honor. Okay. I didn't think so because I didn't see that degree. Sorry, no. I just want to go back a little bit and say this case started as a 1325A1 case, simple attempted illegal entry into the United States. At some point, I assume people became aware of the Lee case being in litigation out of the same district, right? Sure. And the government started thinking, this is not looking too good here. We drew a bad panel from the Ninth Circuit, and here we go. Well, really what happened is we didn't take the – our clients didn't take the plea. And so they said, we're going to charge you with felony conduct under 371. And we're like, how do you do that? This is misdemeanor conduct. You can't do it and run around these statutes and start making felony conduct out of misdemeanor conduct. That's what a client conspiracy is all about, right? You can charge somebody with a conspiracy to obstruct the lawful functioning of the Internal Revenue Service by not filing tax returns, which is itself a misdemeanor. That would be a perfectly appropriate 371 charge, wouldn't it? Yeah, but Lee, if you look to Lee, Lee specifically held it. Look, and I have to go to the exact language of it, but it says we are not going to take – Congress found a specific legal scheme under the CNRA to deal with these type of aliens, and that is immediate deportation. And they said, look, we're not going to apply this general scheme in lieu of Congress's specific intent. There is no violation of 81325A1 when you travel from CNMI to Guam. You cannot attempt to enter the United States when you're already in the United States. Based on Lee? Yes. And I assume that's why the government dropped those substantive counts from the indictment, right? And that's the problem. This whole thing started with 1325A1. Then they said we didn't plea, and they said we're going to indict you. They did. They indicted on conspiracy, 371, 1325A1, 1325A2. Right, but conspiracy is a separate crime. Correct. But it was all based on the actions in the CNMI and 1325A1. Let me put it to you differently. Am I incorrect that under the substantive law of conspiracy, you can be convicted of a conspiracy to do an otherwise legal act by illicit means? Yes, under general conspiracy. Right. And the theory here is conspiracy to obstruct the immigration control functions of the Department of Homeland Security by engaging in conduct that is otherwise legal, getting in a boat on Rota, crossing 33 nautical miles of open waterway, and arriving under questionable circumstances at a place other than where you're supposed to arrive when you get to Guam. But with all due respect, Your Honor, that's incorrect. The indictment, looking at the indictment, they have to properly plead this thing. They based it all on 1325A1 conduct. When the government dismissed everything, they dismissed all the 1325A2, they dismissed everything except for the conspiracy to defraud the government under 371. Okay. Prior to that, we moved to dismiss the indictment. The judge said, well, it's pretty much a close call, but I can read through the entirety of the indictment with the alluding and with the other counts that we find a lawful government function has been obstructed and there's deceitful conduct. Once you extricate all those others, once they dismiss those charges in the indictment, that's all gone. Look, I think you would have a very different case had the object been to simply motor to the harbor or whatever the designated place was and to immediately present themselves and claim asylum. There'd be no crime there. Agree? So the whole case turns or falls on the manner in which they planned to get to Guam and what they were going to do once they got there. And the problem that you've got is the jury apparently believed the testimony of the co-conspirator that by going to the bushes on the tourist beach and hiding themselves and their boats, that they weren't intending to go for the purpose of publicly revealing themselves as asylum seekers, that they had something else in mind. Good point. But before we get there, Your Honor, we must look at the indictment. And once the government dismissed all these charges in the indictment, But they didn't dismiss count one, which is 371. That's correct. That's correct. But they based that count on, and the judge found that it was sufficient, based on the totality of the indictment, including 1325A2 and all the other charges. Doesn't that get back to Judge Tallman's point, though? This 371 is a separate crime, assuming it's proved. The reality that the other counts were dismissed doesn't change the fact that while those crime allegations are gone, you still have 371. And the question is whether they were adequately informed in accordance with the law of the claim by the government they had committed a conspiracy under 371. But they have to be given fair notice, and they weren't, because this indictment was completely based on 8 U.S.C. 1325A1 and A2, which was dismissed. What aspect of the parts of the indictment, or rather of the 371, were they not, of which, let me state it again, what points, what elements of the crime were they not given notice of? Specifically, well, the indictment reads, if you look at page two of the indictment on ER 139 of volume two, purpose and means of this conspiracy, defendants, all citizens of the People Republic of China, aliens under United States law, sought to depart the jurisdiction of the Commonwealth of the Northern Marianas Islands without inspection, comma. Nothing wrong with that. That's not deceit. There's no legitimate government function in the CNMI. Well, am I correct that had they flown, they would have been inspected at the airport on Saipan? And that's why they didn't fly, which would have been a whole lot cheaper. Actually, the problem was they wouldn't have allowed them on the plane, right? If I had shown up at the airport and said, I want to go to Guam for purposes of seeking asylum, the immigration control officer at the airport would have said, I'm not letting you in. They have free clearance. Right. They wouldn't have even been allowed on the plane. But that's what Caldwell, Tuohy, and Murphy all tell us. We impede government functions every day. But that's not enough. That's not enough. Government is in our lives all the time, and we impede them. Chief Judge Kaczynski had a hypothetical. If you use a radar detector, you're impeding the government. But you have to do that through fraud, deceit, trickery, and craft. Well, that's what gets us back to cover of darkness, landing in the bushes at a place not designated for entry. I mean, that's all the evidence in support of the government's deceitful conduct, is it not? One clear point in this case, Your Honor, is that Judge Alsup, the government, and all the defendants agreed. There is no duty to report to anyone to leave the Commonwealth, to get in those rubber rafts at any time of the day, any time of the night. They had a perfect right to do that. There is no duty to report. And if you don't have a duty to report to a governmental agency, then you cannot violate 371. You must have a duty. And then, if you find a duty, you must avoid that duty through deceitful means. It's clear, crystal clear, without dispute. The actions in the CNMI, no duty, nothing wrong with that. Not until you get to Guam. And that's where you look at the second part of the indictment. The second part of the indictment says, to travel and enter the jurisdiction of Guam at a time and place other than as designated by an immigration officer. All right. That's 8 U.S.C. 1325A1. And Lee said, that's not a crime. No duty, no violation, no deceit. Thank you, Counsel. Your time for your side has expired. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court, Kirby Heller and I represent the government. Let me first start with Lee. Lee, I think as the questions have indicated, everyone understands what Lee stands for. Lee does not apply to this case. Lee held that entry as a term of art in immigration law meant for purposes of 1325A1, a defendant does not violate that criminal statute when he travels from the CNMI to Guam. Again, as the questions made clear, this case did not proceed under 1325. Instead, it proceeded under a general conspiracy to defraud the United States, specifically the Department of Homeland Security, by evading the system, I'm sorry, by interfering, obstructing the system of immigration controls that were set up. Which brings us to Count 1 of the indictment. This is the 371 count. I'd appreciate it if you would respond directly to Mr. Berline's critique on that subject. Where is he wrong? Okay. A couple of points, Your Honor. First of all, the indictment does state that these defendants conspired to defraud the United States, and then under the purpose and means of the conspiracy, which is certainly relevant, it talked about two things. One is as part of this conspiracy to evade the system of immigration control, which is enforced through a system of inspection and examination. They sought to leave the CNMI without going through the inspection that they knew would occur if they flew. Now, it's true if this were it alone, that might be a problem, because there wasn't a duty for them to fly. But nevertheless, the jury could certainly consider this in terms of their intentional, purposeful conduct in choosing to transport themselves to Guam in the way they did. But then there's the second part, and that is to travel and to enter the jurisdiction of Guam at a place other than what's designated by an immigration officer by means of these boats going through the water and arriving on a shoreline, which certainly is not a port of entry. Now, Mr. Berline says those requirements really speak to 1325, and the 1325 counts were all dismissed. Well, they also speak to 1182. 1182A6, and again, we're talking about what's the duty here. The duty of these people is when they get to Guam, they have to submit to inspection. They can't go to the bushes first and then decide maybe we'll turn ourselves in later, although that ultimately was a jury question. They have a duty to report for inspection. And that is not 1325 necessarily. That's the criminal sanctions or the criminal penalty for not doing it. But the duty is 1182A6, which says that an alien who has never been paroled in or admitted who arrives in the United States at any time or place other than is designated by the Attorney General is admissible. That is the duty. Then we go to the statute that's relevant here, 1182D7, which says that the provisions of 1182A apply. And, of course, 1182D7 is meant to apply precisely to the travel we have here. This is not quite like traveling between the states, say, in the continental U.S. Congress has made a decision, and the statute has been on the books a long time, that specific kind of travel from the CNMI, from Guam, from other places, is going to require aliens to go, or everybody, really, to go through inspection. And that's because there is. Council, I wonder if I could, since we don't have a whole lot of time, I might get the part that troubles me. It seems, by circumstantial evidence, that the Lee case is what caused the government to drop the other counts. Is that an accurate statement? That was my understanding, Your Honor. Okay, so basically. It hadn't been decided yet, but I think there was a concern. 371 was in there. It was the first count, right? So that was there from the get-go. It's a tough case. It's a close case. Whether you make it or not, we're going to have to decide. But what really troubles me is, if you look at Judge Kaczynski's comments in Caldwell about some of these nightmare scenarios that can occur. Admittedly, that case dealt with whether deceit was actually pled and proven. But the problem is still there. I mean, if you can make a conspiracy out of this, you can make a conspiracy out of almost anything. Kaczynski cites a couple of examples. I'll give you another one. If you have, say, a defense lawyer who truly knows that his client or her client is absolutely guilty, but he or she decides they're going to fight this case to the bitter end, they are thereby obstructing the government from achieving a legitimate objective, which is to convict someone who's guilty of a crime. Are they guilty? 371? And if not, why not? The important point here, and the important point I think that Caldwell makes in other cases, is that there does have to be a duty. It's not enough just to get in government's way. And that's what the problem was in Caldwell. There has to be a duty. And, in fact, Caldwell mentioned that if, in fact, if the issue had to do not submitting a required report, again, a duty, then that would have been a different case. And the duty here is? To submit to inspection. Now, okay, but does it, if they're coming in by boat, does the statute or the regulation indicate where they have to report? Well, I think that the, yes, A6, the statute I just mentioned, talked about a time or place, they can't go to a time or place other than that's designated as a port of entry. Now, it is true that there wasn't really evidence, there was some evidence about one of the ports of entry in Guam, that was the airport. There wasn't evidence about a port of entry when a boat comes in. But, again, this was a jury question, and the jury could certainly reasonably conclude that going into the bushes, going in with the purpose of not being seen, all of which the cooperating witness testified to, early in the morning so you wouldn't be seen, was not a port of entry. And those are points that Judge Tallman highlighted well. And I get that in this case. I'm just disturbed. I mean, this is getting like Henry VIII's time, where we can make conspiracies out of such flimsy things. I mean, if the evidence is correct, at least two of these people were Tiananmen Square protesters, who, had they gotten to an immigration officer, would almost surely have gotten asylum. And yet, here we are prosecuting them under 371. I'm not saying you didn't make your case a flimsy case, but I'm troubled by what the government is doing here. It seems to me we're going too far in how far this statute goes. Well, I guess one problem, Your Honor, is we do have this, the public policy behind 1182D7. We don't want our borders to have this big hole. We don't want these places to be stepping stones. We also have to draft our laws in a way that can give people a reasonable notice and if they do something wrong, it's crime. Right. Well, again, because of this, there was this duty. And these defendants knew that they weren't allowed to travel. That was the whole point of making the trip the way they did. They weren't allowed to do it lawfully. As to the asylum question, there are two points I'd like to make. One is there was a jury question there. Their whole defense was we weren't going to elude anyone. We were going to come and we were going to present ourselves. And that's where the cooperating written is kind of central. Right. So the jury didn't buy that. The other is, of course, they were coming from the CNMI. They were not coming from China. Right. And there was a bit of testimony, mostly from the agent, that, first of all, there are mechanisms in the CNMI to deal with the problem. One defendant had either applied for refugee status or was in the process of doing that. There's relief from removal in the CNMI under immigration law. So it wasn't that these people were on their way out to China or were coming from China. But now, if their conviction is upheld, they're just out of luck. Well, again, I don't know what's going to happen under immigration law in terms of whether they'll be removed. You're out of luck. Right. But the other point is that the other part of federalization is that these defendants, in fact, were not allowed to seek asylum in the CNMI. There's this five-year window. So, in effect, what they were doing is yet impeding DHS in another way, which was they were doing something they weren't allowed to do to get something, which people in their status weren't allowed to get. So, in a sense, it really compounds the way they obstructed the functions of Homeland Security. If there are no other questions, we'll submit another brief. No further questions. Thank you, Counsel. The case just started. Actually, I do have one question. Can you respond to the issue on the jury instructions? I'm sorry? The jury instructions. You didn't address the? Yeah. I'm not sure I entirely understood what the claim was. To the extent the claim, I know what the claims were in the brief. To the extent the claim was that the court was required to instruct that the CNMI was part of the United States, that wasn't really relevant because it wasn't a 1325 case. Again, we're proceeding under their obligation to report for inspection when they got to Guam. As I understand the argument, that's what they're saying, is that the court should have instructed on a theory that it was really a conspiracy to commit a 1325A offense, and as we've discussed at length, that wasn't the theory of the conspiracy. As to the other, there was a claim about not giving a defense instruction on deceit, but the court certainly adequately defined deceit. One other thing in the instructions that the court was extremely careful was to say, first of all, this is not an immigration case. They're not on trial for violating any immigration law. They're allowed to ask for asylum. The court instructed them on the fact that it had to find that there was a duty before they could convict on 371. So these were actually very careful instructions on the elements of 371. No further questions. The case just argued will be submitted for decision, and the court will adjourn. Thank you.
judges: O'scannlain, Tallman, Smith